In re HAMLIN.

(Supreme Court, Appellate Division, First Department. December 30, 1910.)

1. LIFE ESTATES (§§ 5, 21*)—NATURE OF POSSESSION—PERSONAL PROPERTY.

Where a testator creates a life estate in personal property, with remainder over, the life tenant is entitled to possession, if a clear intent can be found in the will to vest such possession, and upon possession becomes a trustee for the remaindermen.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 5, 11, 12, 17, 19, 20; Dec. Dig. §§ 5, 21.*]

2. WILLS (§ 614*)—CONSTRUCTION—ESTATES CREATED—LIFE ESTATE IN PERSONALTY WITH PRESENT POSSESSION.

A will created a life estate in one-third of testator's personal property for the benefit of his wife, and an equal share of the remaining two-thirds for benefit of each of his brothers and sister, with remainder over to their children. The trustees were directed, after payment of certain expenses, to pay weekly the balance of the income, one-third to his wife and two-thirds to his brothers and sister, and were empowered to sell the personal property as soon as the best interests of his estate would permit, and to pay over the proceeds thereof to his wife, sister, and brothers, and as soon as the trustees should have disposed of the personalty and paid over the income and proceeds thereof they should be discharged. The will also gave to the wife, after certain specific bequests, a life estate in one-third of all the rest of testator's property, real and personal, and to his brothers and sister the remaining two-thirds of the residue of his estate, with provisions in both paragraphs for remainder over to the children of his brothers and sister, and in a further clause expressly recited that it was the intent throughout the instrument that the wife should take a life estate only in every devise or bequest of real or personal property, with the exception of certain bequests of jewelry, clothing, etc. *Held*, that the wife and the brothers and sister took life estates in the personalty bequeathed to them, with the right to the present possession thereof.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1393–1416; Dec. Dig. § 614.*]

3. EXECUTORS AND ADMINISTRATORS (§ 475*)—ACCOUNT—LIABILITY FOR PERSONALTY TRANSFERRED TO LIFE TENANT.

Testator's widow and his brothers and sister having made out of court the distribution among them of the personalty bequeathed by the will, the executor and executrix could not be surcharged with the value thereof.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 475.*]

4. EXECUTORS AND ADMINISTRATORS (§ 298*)—ACCOUNT—LIABILITY FOR PERSONALTY TRANSFERRED TO LIFE TENANT.

Where executors pay over to life tenants in personalty the corpus of the property, it lies within their discretion to require security of such life tenants for the ultimate benefit of the remaindermen, if in their judgment it is necessary; but where they have transferred possession, without requiring security, they are not to be surcharged because they did not demand such security.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1217; Dec. Dig. § 298.*]

Appeal from Surrogate's Court, New York County.

Proceedings for settlement of the estate of Frederick R. Hamlin. From an order of the Surrogate's Court, confirming the report of a referee to pass upon the accounts of Herbert W. Hamlin, executor, there was an appeal. Reversed and remitted, with instructions.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and CLARKE, JJ. ·

Strong & Cadwallader (Henry W. Taft, of counsel, and Francis Smyth, on the brief), for appellant.

Albert E. Seibert (Morgan J. O'Brien, of counsel), for respondent Hamlin.

CLARKE, J. Frederick R. Hamlin died on November 27, 1904, a resident of the county and state of New York, leaving him surviving his widow, Mary B. Hamlin (now Warner), his father, John A. Hamlin, his mother, Mary E. Hamlin, his brothers, Harry L., Herbert W., and George J. Hamlin, and his sister, Bessie F. Clark, leaving a last will and testament, which was duly admitted to probate December 5, 1904. He appointed his wife his executrix, and his brothers Harry L. Hamlin and Herbert W. Hamlin executors. He had been a theatrical manager, interested in various enterprises. By the second paragraph of his will he gave and bequeathed unto his friends and business associates, Julien T. Mitchell and William W. Gray—

"all of my theatrical properties and interests, except such as may be composed of real estate, of which I may die possessed, including all stock, individual and partnership rights in and to any plays, operas, extravaganzas, scenarios, musical scores, and every species of dramatic or musical composition, scenery, costumes, properties, and other stage effects, book accounts, contract rights, options, and choses in action, as well as every other species of personal property in any way connected with, or which may hereafter become connected with, my business as a theatrical manager and producer; and I direct that they shall hold the same in trust for the following uses and purposes, to wit."

Thereafter follow nine clauses, containing careful and precise provisions, defining the purposes and conduct of the trust so created. The provisions material to the matter at bar, as throwing light upon ·decedent's general testamentary intention, are the following:

"(f) I further direct that after all of the above payments and provisions have been met, the balance of said income remaining in the hands of the said trustees shall be paid over weekly as follows: One-third to my wife, Mary Hamlin, and the remaining two-thirds to my brothers Harry L., George J. and Herbert W. Hamlin, and my sister Bessie F. Hamlin in equal parts; in case of the death of any of my said brothers or my said sister, without leaving a ·child or children, issue of his or her body, whether his or her death occurs ·during my lifetime or thereafter, his or her respective share of the above-named two-thirds shall be equally divided between the survivors of them my said brothers and sister, but in case of such death at any time after the date ·of this instrument of such brother or sister, leaving a child or children, issue of his or her body, then such child or children shall stand in the place of the respective parent and take or divide what would or shall have been the .share of the same in case the said parent survived.

"(g) Upon the death of my said wife at any time after the date of this in-.strument, whether during my lifetime or thereafter, I direct that the one-third share of the said income above allotted to her, shall, as the same shall ·thereafter accrue, together with any surplus of previously paid dividends remaining in her possession or control at the time of her death, be equally divided among my said brothers and sister then surviving (and their said ·children by way of representation) upon the same basis as is provided for in subsection (f) above.

"(h) I further direct that as soon as the best interests of my estate and ·of the beneficiaries thereof shall permit of the sale or similar disposition of

the corpus or principal of any part of my said theatrical properties or interests at a figure commensurate with the value of the same, my said trustees shall make such sale or similar disposition and pay over the proceeds thereof to such as may be then surviving of my said wife, sister and brothers (the children of my said sister and brothers to stand in the stead of their respective parents by way of representation in case of the latter's decease), in equal parts, share and share alike; and I direct that the survivors of my said brothers and sister (and the children of the same by way of representation) shall, in case of the death of my said wife at any time after the date of this instrument, take the said proceeds previously allotted to her and the interest and accretions therefrom remaining, in equal portions, share and share alike, on the same basis as is provided for above in regard to the income of my said theatrical properties;   *   *   *   it being my purpose that the said trustees shall close out and dispose of my said theatrical interests as soon after my decease as the best interests of said properties and of the beneficiaries thereof shall permit or dictate."

The will thus provided for a weekly payment of the balance of the income of the trust estate, one-third to the wife and two-thirds to his brothers and sister, and, upon the completion of the trust, for a sale of the corpus and a payment over of the proceeds thereof to the then surviving wife, sister, and brothers. The will proceeded:

"Fifth: I give, devise and bequeath unto my wife, Mary Hamlin, in lieu of dower, a life estate, similar to her life estate in the income of my theatrical interests above allotted, in one-third of all the rest and residue of my estate, both real and personal, not otherwise herein specifically disposed of, and direct that upon her death the same shall be distributed, together with all principal and interest, profits and accretions, of the real and personal property, which she, my said wife, may take or acquire up to the time of her death, by reason of any of the gifts, devises and bequests contained in this instrument, among my then surviving brothers and sister, hereinbefore mentioned, and the child or children, issue of the body, of any such brother or sister then deceased; such child or children to stand in the place of its or their respective parent and to take the share such parent would have taken if living at the time of my said wife's decease.   *   *   *

"Sixth: I give, devise and bequeath unto my said brothers and sister (and, in case of their decease, unto their said children by way of representation), the remaining two-thirds of all the said rest and residue of my estate, both real and personal, not otherwise herein specifically disposed of, in equal portion, share and share alike; in case of the death of any of my said brothers or sister (either prior or subsequent to my decease), leaving no child or children, issue of the body, the share that would or shall have been taken by such brother or sister, shall go to the survivors of them in equal portions, share and share alike, but in case of such death leaving such child or children then the latter shall take the share that would or shall have gone to the respective parent in case of survival.

"Seventh: It is my intent and purpose throughout this instrument that my said wife shall take a life estate only in and to every devise or bequest of real or personal property, and in and to the income or accretion therefrom, except only the bequests contained in section fourth hereof; that upon her death all such property, except as aforesaid, shall go to my said brothers and sister surviving (and to their children by way of representation), to be enjoyed by them, my said brothers and sister, during the course of their natural lives, with remainder to their said children; that every interest in any of the property disposed of by this instrument coming to my said brothers and sister shall be subject to the interest of their respective children (or if dying childless to that of the survivors of such brothers and sister) by way of an estate in remainder as to such children and a life estate as to said brothers and sister; that upon my death, or that of any of my said brothers or sister, or of my said wife, whereby an estate in enjoyment shall be created in favor of said children, issue of the body, of my said brothers and sister,

such estate shall be an absolute estate and vest the property absolutely in such children without qualification; that the words 'child' or 'children' as used in this instrument, shall not be confined to such as are living at the date of my decease, but shall include such as have been born to my said brothers or sister at any time within twenty-one years of my decease; that the property in every case disposed of herein shall not be confined to such as is possessed by me at the date of this instrument but shall include all property thereafter acquired up to the date of my decease.

"Ninth: I direct further that one-fourth part of the income received at any time from my estate by any of my said brothers or sister (or their children by way of representation) shall be paid over by each of them to my mother, Mary E. Hamlin, in case she shall survive me, during the balance of her life."

## The learned referee found, among other things, as follows:

"V. The remaindermen under the said will are all infants, represented upon the record by Cipriano Andrade, Jr., Esq., as special guardian. Their names are as follows: George E. Hamlin, Anna M. Hamlin, John F. Hamlin, and Dorothy Hamlin.

"VI. By the 'fifth,' 'sixth,' and 'seventh' articles of his will the testator bequeathed a life interest in the income of one-third of his residuary estate to his widow, Mary B. Hamlin, and a life interest in the remaining two-thirds to his three brothers and sister, with remainder over under certain circumstances, in absolute ownership, to his nieces and nephews.

"VII. This residuary estate was composed substantially of cash and stocks and bonds of business corporations, and practically all of it * * * was turned over to the said life tenants, without the exaction of any security from them.

"VIII. The said residuary estate, so distributed, was composed of securities, which were, by agreement between the said executors and the said life tenants, taken over at a cash valuation, as set forth in Schedule D2 of the executor's account. The agreed cash value of the respective portions of the residuary estate so received by the said life tenants was as follows:

| | |
|---|---|
| To Mary B. Hamlin, one-third............................ | $48,815 82 |
| To Harry L. Hamlin, one-sixth........................... | 24,407 91 |
| To Herbert W. Hamlin, one-sixth........................ | 24,407 91 |
| To George J. Hamlin, one-sixth........................ | 24,407 91 |
| To Bessie H. Clark, one-sixth.......................... | 24,407 91 |
| | $146,447 46 |

"IX. No security was exacted from any of the distributees, and the said distribution was made without the sanction of the court and without notice to the remaindermen.

"X. Each of the said life tenants gave a receipt to Herbert W. Hamlin, the accounting executor, wherein the receipt of the securities was acknowledged on account of the distribution of the estate of the above-named decedent under his will, and accepted in lieu of the money value thereof, at the valuation stated in said receipt."

## And as conclusions of law:

"I. The executor, Herbert W. Hamlin, and the executrix, Mary B. Hamlin, now Warner, should be surcharged with the amount of the corpus of the residuary estate distributed to the life tenants.

"II. The said Mary B. Hamlin, now Warner, is entitled to a life interest only in one-third of the said residuary estate, and the said Harry L. Hamlin, Herbert W. Hamlin, George J. Hamlin, and Bessie H. Clark are each entitled to a life interest in the remaining two-thirds of said residuary estate."

## In his opinion the referee said as follows:

"The residuary estate was composed substantially of cash, bonds of business corporations, and certificates of ownership of shares in various business

·corporations. So far as these securities are concerned, they are of a kind which executors are not permitted either to hold or to acquire as an investment of estate moneys. Most of them were never disposed of, and the proceeds of such of them as were sold, together with a large amount of the cash on hand, were placed in investments of a similar character. All these bonds and certificates have been distributed among those entitled, as life tenants, to take the income of the residuary estate. This was done without the exaction of security, without the sanction of the court, and without notice to the remaindermen, all of whom are infants. * * * It is also worthy of notice that the three executors, together receiving four-sixths of the income as life tenants, have attempted to take the power of disposition of that proportion of the principal from themselves jointly and in trust as executors, and to vest that power in themselves severally and absolutely as legatees. In considering the questions here presented, an examination of the fifth, sixth, ·and seventh clauses of the will, which are the only ones relating directly to the disposition of the residuary estate, shows that there is no provision for the possession of the principal by the life tenants, and that they are given no more than the enjoyment of their respective shares of the income which that estate may produce during the lives of the said life tenants. Under these circumstances it was the duty of the executors to convert the bonds and stocks of the residuary estate into money, as not being legitimate forms of investment for trust funds, to invest the same and all other moneys belonging to said estate in lawful securities, and to pay over the income to the life tenants."

It appeared in evidence that Mrs. Warner had sold almost all of the securities delivered to her, and had made a net profit upon such sales of $13,046.55. The learned surrogate confirmed the referee's report, ordered "that the value of the securities forming the corpus of the residuary estate, with which the executor, Herbert W. Hamlin, and the executrix, Mary B. Warner, are surcharged, shall be the present value of the said securities," and that "the question of the present value of the securities with which the accountants are found ·chargeable" be referred to the former referee, to take testimony thereof and to report to the court the evidence and his conclusions thereon. It is from that order that this appeal is taken.

The questions presented to this court are but three: First. The legatees having agreed upon a distribution in kind of the residuary estate, and upon the value thereof, were they entitled to receive as life tenants their distributive shares in possession? Second. Having so agreed, and having received possession of said shares, should the executor and executrix be surcharged in their accounting with the value thereof? Third. If so, should that surcharge be as of the value at the time of distribution, or of the agreed value at said time, or as of the present value?

As a practical question, so far as security to the remaindermen is concerned, it should be pointed out, first, that the will provided that no bond or security of any sort should be required of the executrix and the two executors in that capacity, and that the executrix and the ·executors are three of the five life tenants; second, that the remaindermen are the children of three of the life tenants, the brothers of the decedent, of whom two are executors of the will; third, that in settlement of another matter, growing out of the estate of the decedent, Mrs. Warner has entered into an agreement under seal with the broth-

ers and sister of her late husband, wherein, among other things, she agreed—

"to give a good and sufficient bond to the executors of said Frederick R. Hamlin, deceased, for securing to the remaindermen the safe payment to them upon her death of the principal of the fund paid and to be paid over to her by such executors, as such legatee, for use during her life."

Where a testator creates a life estate with remainder over in personal property, the rule is clear that the life tenant is entitled to possession, and upon possession becomes a trustee for the remaindermen, if a clear intent can be found in the will to vest such possession. Matter of Ungrich, 48 App. Div. 595, 62 N. Y. Supp. 975, affirmed 166 N. Y. 618, 59 N. E. 1131.

The will at bar is a long and carefully drawn document. Testator in the disposition of his estate had the general scheme of creating a life estate in one-third of his property for the benefit of his widow, and of equal shares of the remaining two-thirds for the benefit of his brothers and sister, with remainder over to their children. In the carrying out of this scheme he discriminated very carefully between the different kinds of property owned by him. Being in the theatrical business, and understanding its characteristics and peculiarities, he created a trust, and appointed his former business associates as trustees thereof, and gave and bequeathed unto them all of his theatrical properties and interests, except such as might be composed of real estate. After providing for the payment of the salaries of the persons connected therewith and the necessary and current expenses of said properties. he provided that they should retain in their hands a fund of $10,000, the principal or interest of which to be applied to the preservation and proper handling of said theatrical interests; but the bulk of such fund should be kept invested—

"and the income thereof be added to the general income of my estate and disposed of from time to time as is hereinafter provided the said general income shall be distributed. After the closing out of my said theatrical interests, the balance of said fund then remaining shall also be distributed upon the same basis."

Here the payment of the surplus income and the ultimate disposition of this specific fund in the hands of the trustees was made dependent upon the subsequent provisions of the will governing his general estate, indicating a clear intent pervading the whole will.

In the next subdivision he directs that, after the payments and provisions have been met, the trustees shall pay over weekly the balance of the income, one-third to his wife and two-thirds to his brothers and sister. He then gives the trustees a power of sale, and directs them to so sell his theatrical properties and interests, as soon as the best interests of his estate shall permit, and directs them to pay over the proceeds thereof to his wife, sister, and brothers; and he directs that, in the case of the death of his wife, his brothers and sister shall take the said proceeds previously allotted to her and the interest and accretions therefrom remaining. He further provides:

"As soon as the said trustees shall have disposed of the said theatrical properties and accounted for and paid over the income and proceeds thereof, they shall be discharged from the said trust."

126 N.Y.S.—26

That is, immediate possession and control was vested in the trustees, with directions to pay over the income, with power to sell, and with specific instructions not to hold the proceeds thereof and continue the trust, paying the income therefrom to the cestuis que trust, nor to pay the proceeds thereof over to the executors as a part of the general estate, but to pay said proceeds directly in the designated portions to his wife, brothers, and sister. There can be no doubt that upon that event his widow and his brothers and sister were entitled to take and hold the proceeds so distributed, and that the trust came to an end.

As to the balance of his estate, he first made a specific bequest of $2,500 to a friend and associate; then to his wife a specific bequest of his personal jewelry, clothing, household furniture, pictures, plate, horses, carriages, and similar effects, "to be and remain her own absolute property." He then used direct words of gift:

"I give, devise and bequeath unto my wife * * * a life estate, similar to her life estate in the income of my theatrical interests above allotted, in one-third of all the rest and residue of my estate, both real and personal.

"I give, devise and bequeath unto my brothers and sister, the remaining two-thirds of all the rest and residue of my said estate"—

with provisions in both paragraphs for remainder over to the children of his brothers and sister. Then by a special and further clause he clearly defined his own intention:

"It is my intent and purpose throughout this instrument that my said wife shall take a life estate only in and to every devise or bequest of real or personal property, and in and to the income or accretion therefrom, except only the bequests contained in section fourth hereof [which was the direct bequest of his jewelry, household furniture, etc.]; that upon her death all such property except as aforesaid shall go to my said brothers and sister, surviving, * * * to be enjoyed by them * * * during the course of their natural lives, with remainder to their said children; that every interest in any of the property disposed of by this instrument, coming to my said brothers or sister shall be subject to the interest of their respective children (or if dying childless to that of the survivors of such brothers or sister) by way of an estate in remainder as to such children and a life estate as to said brothers or sister."

There can be no doubt here of his intention to create a life estate of the residue of his property in his wife and brothers and sister, with remainder over to their children. It will be noted that the words of gift are direct; that no power of sale is conferred upon the executors, as was the case in regard to the trustees as to the trust estate; that he refers back to former clauses in the will; that he uses the phrase "my intent and purpose throughout this instrument," showing a purpose pervading all his dispositions, which requires us, in the interpretation of one clause, to give force and effect to all, if possible.

The will shows that the testator had clearly in mind the difference between a trust estate, a specific bequest with absolute title, an estate for life, and a power of sale. It would seem natural that, if he had intended to reserve from the tenants for life possession of his estate, he would either have extended the trust created by the first portion of his will over his entire estate, or would have made similar specific instructions to his executors. He did neither. On the contrary, having provided as to the trust estate that the proceeds of the sale upon the

final winding up thereof should be paid over, he then said, when he came to define the life estate to his wife, "similar to her life estate in the income of my theatrical interests above allotted," and, tying them closely together in a set purpose with a fixed idea, requiring a common interpretation, "it is my intent and purpose," not in regard to the residuary estate alone now being disposed of, but "throughout this instrument that my said wife shall take a life estate only in and to every devise or bequest of real or personal property and in and to the accretion therefrom, except only the bequest contained in section fourth hereof."

It seems to us plain, therefore, that there is to be found in this will the clear and unambiguous expression of intent of the testator to give to his wife the present possession of one-third of his estate, to be held by her for her life and with remainder over, and that she had a right to take such one-third, that his brothers and his sister also had the same right, and that, having made out of court the distribution warranted by the will, the executrix and executor are not to be surcharged in their accounting with the value thereof.

This interpretation is strengthened by the further provision of the will that:

"One-fourth part of the income received at any time from my estate by any of my said brothers or sister shall be paid over by each one of them to my mother."

If it was his intention that the executors should hold the estate as continuing trustees, the direction would have been to them to pay over to the mother; but here the direction to pay is to his brothers and sister, who, by the preceding portions of the will, had been vested with the possession of the life estate.

The learned surrogate has acted upon the theory that it was the absolute duty of the executors to retain possession of the personal property, to convert the stocks and bonds into money, as not being legitimate forms of investment for trust funds, to invest the same and all other moneys belonging to said estate in lawful securities, and to pay over the income to the life tenants. This view is in direct opposition to the intention of the testator expressed in his will, as we have demonstrated, supra.

The second proposition is that, if the executors did transfer the possession to the legatees as life tenants, it was their duty to require of said life tenants security for the benefit of the remaindermen. We do not think the authorities support any such absolute obligation. We think that the utmost that can be said is that a discretion is conferred upon the executors to require security for the ultimate benefit of the remaindermen, if, in their judgment, under the terms of the will and the circumstances existing at the time of the payment over, they deem it necessary. But when they have acted, and have transferred the possession to the life tenants without requiring security, they are not to be surcharged with the amounts so paid because of the mere fact that in the exercise of their discretion they did not demand such security.

In Smith v. Van Ostrand, 64 N. Y. 278, Rapallo, J., said:

"When a life estate is bequeathed in a sum of money, with remainder over, the legatee is entitled only to the income, and the principal, subject to the

life estate, belongs to the remainderman, and, unless otherwise directed by the will, it is the duty of the executor either to invest the money and pay the interest to the first legatee during life, and preserve the principal for the remainderman, or, on paying it over to the legatee, to require security from him for the protection of the remainderman in respect to the principal. Tyson v. Blake, 22 N. Y. 558. But it is within the power of a testator to dispense with these safeguards, and to confide the money to the legatee for life, trusting to such legatee to preserve the fund for the benefit of the remainder, in which case the legatee for life becomes trustee of the principal during the continuance of the life estate. * * * The executors, * * *. when they paid it over to the widow, parted with all interest in it, and left it to follow the course directed by the will. They were required by the will to pay it over to the widow, and, having done so, were discharged from all liability, and divested of all power concerning it."

In the Matter of Ungrich, supra, where the court had held that by the clear and unambiguous terms of the will the testator had made his wife the testamentary trustee of the principal of his personal estate for life, and had given her the custody and possession of the personal property, the court said:

"She is therefore entitled to such custody and possession as such trustee, and can no more be required to give security as a matter of course than the appellant executors could be required to give security as a condition precedent to the execution of the trust reposed in them. 'Before making an order for such security,' said the court, in Matter of the Petition of Camp, 126 N. Y. 377, 385 [27 N. E. 799, 801], 'there must be some fact alleged and proved tending to show the property would be unsafe and insecure in the hands of the tenant for life' "—citing authorities.

In Leggett v. Stevens, 185 N. Y. 70, 77 N. E. 874, the court said:

"The referee has found, upon ample evidence, that the widow took the fund in question individually, and not as administratrix of her husband's estate. She was thus constituted a trustee for the remaindermen. When the administratrix of the testator turned over to the widow, for use during her life, the securities and cash representing legacies of $12,000, they parted with title and possession thereof, and were discharged from all liability and divested of all power concerning them. Smith v. Van Ostrand, 64 N. Y. 278; Matter of McDougall, 141 N. Y. 21 [35 N. E. 961]; Matter of Ungrich, 48 App. Div. 594 [62 N. Y. Supp. 975], affirmed 166 N. Y. 618 [59 N. E. 1131]."

In Matter of Bushnell, 73 App. Div. 325, 77 N. Y. Supp. 4, this court said:

"Ordinarily a life estate in personalty (not specifically bequeathed) does not entitle the life tenant, as a matter of right, to the possession, and the executors must exercise ordinary prudence in determining whether they will turn over the corpus upon a mere receipt acknowledging the interest of the remaindermen, or whether they will require security or retain the fund and pay over the income. * * * But, whether the life tenant would be entitled to the possession of the property or not, there is no presumption that. she will unlawfully use or waste the corpus of the estate which it is her duty to preserve for the benefit of the remaindermen. If she be entitled to possession, and the nature of the property or the circumstances or her financial condition are such as to render it proper that she should give security that she will preserve the principal, the surrogate is authorized to require such security before the executors would be required to turn the property over to her."

We are satisfied from these authorities that while it is plain that if the residuary estate were still in the hands of the executors and executrix undistributed, and the legatees were attempting to enforce a trans-

fer to them by the executors, they could, in a proper case, be required to give proper security as a condition precedent; but, as the executors have made the distribution authorized by the will, the Surrogate's Court had no power to surcharge their accounts with said payments because no security was required. The funds have passed from their hands as executors and executrix to the legatees, who now hold them as trustees for the remaindermen. As such trustees the legatees are subject, in the conduct of their trusts, to the usual supervision of a court of equity in proper proceedings.

It therefore becomes unnecessary to now consider whether upon an accounting the value of the property should be taken as of the time of distribution, or as of the time of the accounting, because, although the tenants for life are trustees for the remaindermen, they are not being called to account at this time, and in the Surrogate's Court, for their handling of said trust estate.

It follows that the order appealed from should be reversed, and the matter remitted to the Surrogate's Court, with instructions to proceed upon the accounting in accordance with this opinion, with $10 costs and disbursements to the special guardian and the appellant, to be paid out of the estate. All concur.