In the Matter of the Accounting of the FULTON TRUST COMPANY OF NEW YORK, as Trustee under the Will of FREDERICK H. CLARK, Deceased, Appellant.

ELIZABETH C. MCCORMACK et al., Respondents.

(Argued June 3, 1931; decided July 15, 1931.)

*William N. Cohen, William Harison* and *Arthur Sutherland* for appellant. Where a will expressly relieves the trustee from liability for retaining investments, the trustee, acting in good faith is entitled to the benefit of the immunity. (*Gould* v. *Gould*, 126 Misc. Rep. 54; *Crabb* v. *Young*, 92 N. Y. 56; *Matter of United States Trust Co.*, 189 App. Div. 75; *Matter of Olmstead*, 52 App. Div. 515; *Matter of Howard*, 110 App. Div. 61; *Warren* v. *Pazolt*, 203 Mass. 328; *Matter of Hurlbut*, 210 App. Div. 456.) The trustee was not guilty of negligence. (*King* v. *Talbot*, 40 N. Y. 76; *McCabe* v. *Fowler*, 84 N. Y. 314; *Ormiston* v. *Alcott*, 84 N. Y. 339; *Jackson* v. *Jackson*, 1 Atk. 513; *Thompson* v. *Brown*, 4 Johns. Ch. 619; *Matter of Chapman*, [1896] 2 Ch. 763; *Jones* v. *Jones*, 2 N. Y. Supp. 844; *Green* v. *Crapo*, 181 Mass. 55; *Matter of Weston*, 91 N. Y. 502; *Matter of Mercantile Trust Co.*, 156 App. Div. 224; *Matter of United States Trust Co.*, 189 App. Div. 75.) A trustee, when acting within the scope of the will, is not liable for an error of judgment, nor to be judged in the light of subsequent events. (*Purdy* v. *Lynch*, 145 N. Y. 462; *Costello* v. *Costello*, 209 N. Y. 252; *Ormiston* v. *Olcott*, 84 N. Y. 339; *Matter of Weston*, 91 N. Y. 502; *Matter of Mercantile Trust Co.*, 156 App. Div. 224; *Green* v. *Crapo*, 181 Mass. 55; *Matter of Chapman*, [1896] 2 Ch. 763.) There is a distinction between an investment made by a trustee himself and the authorized retention of securities left by the testator. (*Jones* v. *Jones*, 2 N. Y. Supp. 844; *Matter of Chapman*, [1896] 2 Ch. 763; *Matter of Weston*, 91 N. Y. 502; *Matter of Mercantile Trust Co.*, 156 App. Div. 224; *Matter of Hall*, 164 N. Y. 196; *Green* v. *Crapo*, 181 Mass. 55; *Bowker* v. *Pierce*, 130 Mass. 262.)

*Bern Budd* and *Kenneth C. Quencer* for Elizabeth C. McCormack et al., respondents. There is ample evidence to sustain the finding of negligence. (*Matter of Friedlander*, 189 App. Div. 90.) The discretionary power to retain investments and the immunity clause in the will do not relieve the trustee from its negligence. (*Matter of Hall*, 164 N. Y. 196; *Carrier* v. *Carrier*, 226 N. Y. 114; *King* v. *Talbot*, 40 N. Y. 76; *Mattocks* v. *Moulton*, 84 Me. 545; *Rae* v. *Meek*, 14 A. C. 558; *Matter of Hurlbut*, 210 App. Div. 456; *Matter of Richardson*, 229 App. Div. 738; *Guaranty Trust Co.* v. *U. S. Steel Corp.*, 107 Misc. Rep. 720; 187 App. Div. 889; 226 N. Y. 693; *Matter of Frank*, 124 Misc. Rep. 664; *Matter of Channing*, 129 Misc. Rep. 393; *Matter of Gilman*, 251 N. Y. 273; *National Trustees Co.* v. *General Finance Co.*, [1905] A. C. 373; *Matter of Jarvis*, 110 Misc. Rep. 5.)

*William J. Wallin*, as special guardian, for Marion McCormack et al., respondents. The trustee was negligent in continuing to retain the sugar stocks for a period of seven years, during all of which time the price of raw sugar declined rapidly, earnings of sugar. corporations were greatly diminished, and the stock market prices of the securities reflected rapidly declining values. (*King* v. *Talbot*, 40 N. Y. 76; Perry Trusts, §§ 460, 466; *Mertz* v. *Guaranty Trust Co.*, 247 N. Y. 137; Dec. Est. Law, § 111; *Matter of Hall*, 164 N. Y. 196; *Gould* v. *Gould*, 213 N. Y. Supp. 286.) The immunity afforded by the will is not sufficiently broad to protect the trustee. (*Crabb* v. *Young*, 92 N. Y. 56; *Gould* v. *Gould*, 126 Misc. Rep. 54; *Toronto General Trust Co.* v. *C., B. & Q. R. R. Co.*, 64 Hun, 1; Perry Trusts, § 465.)

KELLOGG, J. The will of Frederick H. Clark, who died in the year 1920, provided for the transfer of four twenty-sevenths of his residuary estate to the Fulton Trust Company of New York, to be held in trust for the benefit of his daughter Elizabeth C. McCormack during life, one-

half of the principal thereof to be paid over to her when she arrived at the age of thirty-five years, and the other half to be paid over to her children upon her death. Pursuant to a decree, settling the executors' accounts made in Surrogate's Court on March 14, 1923, the executors delivered to the Fulton Trust Company cash and securities, representing four twenty-sevenths of the residuary estate, to be administered by it in execution of the trust. Among the securities turned over were 1,248 shares of the common stock of the Cuban American Sugar Company of the par value of $10 a share, and 296 shares of the common stock of Guantanamo Sugar Company of no par value. These stocks had originally been held by Frederick H. Clark, the testator. They had been retained by the executors of his will and were distributed to the trustee under a testamentary provision reading as follows: " I hereby authorize and empower my Executors and Trustees to continue all the investment of money in the securities made by me and which shall come into their possession and control at my decease, without any personal liability for so doing, and in making division of my estate among the legatees and devisees as provided in this my Will, I authorize my Executors and Trustees to divide the securities as far as practicable, giving to each legatee the same proportion of each security, and not to require any one legatee to take his or her share in whole from any kind or class of securities." In the executors' accounting, the Cuban American stock had been valued at $22 per share; the Guantanamo stock at $12.25. In this accounting of the trustee, instituted by Elizabeth McCormack on her arrival at the age of thirty-five years, the Cuban stock has been valued at $7; the Guantanamo at .50 cents. The Surrogate has determined that the trustee should have sold the Cuban stock in the month of September, 1927, when its value was $20 per month and the Guantanamo in September, 1928, when its value was $5 per share. These valuations were based exclu-

sively on current prices on the New York Stock Exchange. Having so found, the Surrogate surcharged the accounts of the trustee with a loss of $16,224 on the Cuban American stock, and a loss of $1,332 on the Guantanamo Sugar Company stock.

It has been stated that " there appertains to the relation of trustee and *cestui que trust*, a duty to be faithful, to be diligent, to be prudent in an administration entrusted to the former, in confidence in his fidelity, diligence and prudence;" that " the just and true rule is, that the trustee is bound to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs." (*King* v. *Talbot*, 40 N. Y. 76, 84, 85.) The statement has been frequently approved. (*Matter of Weston*, 91 N. Y. 502, 511; *Costello* v. *Costello*, 209 N. Y. 252, 261.) In determining whether the acts of a trustee have been prudent, within the meaning of the rule, we must " look at the facts as they exist at the time of their occurrence, not aided or enlightened by those which subsequently take place " (per PECKHAM, J., in *Purdy* v. *Lynch*, 145 N. Y. 462, 475); for it is an obvious truth that " a wisdom developed after an event and having it and its consequences as a source is a standard no man should be judged by " (per COLLIN, J., in *Costello* v. *Costello, supra*, at p. 262); and it is impossible to say that trustees are wanting in sound discretion " simply because their judgment turned out wrong " (per HOLMES, C. J., in *Green* v. *Crapo*, 181 Mass. 55, 58). We must distinguish also between the acts of trustees in making investment of trust funds, and their acts in making, or failing to make, prompt disposition of securities received from the hands of the creator of the trust. (*Matter of Weston, supra; Jones* v. *Jones*, 2 N. Y. Supp. 844; *Matter of Mercantile Trust*, 156 App. Div. 224; *Matter of Chapman*, [1896] 2 Ch. 763.) Self-evidently the purchase of a speculative stock by a trustee is one thing; the retention of such

a stock awaiting the arrival of a favorable opportunity to sell, is quite another; the former would constitute negligence; the latter, regarded prospectively, might be prudent, although in retrospect it might seem to have been a grievous error. Furthermore, the distinction between negligence and mere error of judgment must be borne in mind. " Trustees acting honestly, with ordinary prudence and within the limits of their trust, are not liable for mere errors of judgment " (per LINDLEY, J., in *Matter of Chapman, supra*, at p. 776); a trustee should not be held liable " for unfortunate results which he could not be expected to foresee and was powerless to prevent " (*Ormiston* v. *Olcott*, 84 N. Y. 339, at p. 347).

The testator empowered his executors and trustees " to continue all the investment of money in the securities made by me and which shall come into their possession and control at my decease, without any personal liability for so doing." The very fact that the trustees, as well as the executors, were so authorized, indicates that the testator contemplated that the securities left by him might be held over an extended period. Although, at the time of the executors' accounting, the sugar stocks had been retained by the executors for three years, the Surrogate absolved them of blame for not making disposal thereof, and directed that the stocks be turned over in kind to the trustee of the various trusts created by the will. The Surrogate then expressed his opinion as to the wishes of the testator in regard to the stocks that " it was his desire that they should be kept at all hazards." If such were his desire, equally was it his wish that they should be kept " without any personal liability for so doing." The testator had an absolute right to provide that his trustee should not be liable for losses accruing from the retention of the securities, although it may have been imprudent so to retain them. (*Crabb* v. *Young*, 92 N. Y. 56, 65.) In that case the testator had provided that his trustees should not be

liable for losses except those arising "from their own willful default, misconduct or neglect." The court said: "It is quite clear that they cannot be held liable to replace the moneys lost through even an improvident or careless investment, unless they have acted willfully and have intentionally disregarded the rules which control and regulate the action of prudent and careful men in conducting their own business affairs." Our will does not go quite so far as the will quoted, but at least there must be evidence of lack of reasonable care.

"There is no rule of law which compels the court to hold that an honest trustee is liable to make good loss sustained by retaining an authorized security in a falling market, if he did so honestly and prudently, in the belief that it was the best course to take in the interest of all parties." (Per LINDLEY, J., in *Matter of Chapman, supra*, at p. 776.) It cannot be said that the trustee was negligent in the sense that it was inattentive to its duty, or ignored the question whether a sale of the stocks was advisable or otherwise. The securities of the trust were examined and considered by a committee of the trustee's directors at least once in every six months. This committee was composed of distinguished financiers, members of the New York Stock Exchange, lawyers and others of note in business circles. It was their judgment that the stock should not be sold. They consulted Henry Clark, a brother of the testator, and first vice-president of the Cuban American Sugar Company, and it was his advice, given as late as 1928, not to sell. They consulted Horace O. Havemeyer and William O. Havemeyer, well-known figures in the sugar trade, and received the same advice. True, the trustee, in a written statement sent to beneficiaries of various trusts under the will which it administered, entitled "Review of Trust Investments," and dated June 1st, 1928, reported that the Cuban and Guantanamo stocks were "unsuitable for long term holdings, as trust investments." Yet none of

these beneficiaries, including the petitioner, Mrs. Clark, the testator's widow, or Mrs. Quincer, all then of full age, ever requested that a sale be made. Moreover, each of these women, in satisfaction of absolute gifts under the terms of the will, had received many shares of stocks in the same sugar companies. Although complaining that the trustee of this particular trust had not made a sale, not one of them, up to the date of the accounting, had disposed of their own stocks. Doubtless, the securities were not suitable to long term holdings. But when to sell? " Stocks of variable value ought not to be timidly and hastily sacrificed, nor unwisely and imprudently held." (Per FINCH, J., in *Matter of Weston, supra*, at p. 511.) The Surrogate determined that the trustee should have sold in September, 1927. Yet from the preceding December of 1926, the market prices for Cuban American had consistently fallen, the high and low for each succeeding month being lower than for the preceding. The same consistent decline followed through to the date of the accounting. The fall was due solely to the oversupply of sugar in the markets of the world. An oversupply of a commodity, compelling sales at prices netting little or no profit, in the long run necessarily induces under planting, which in turn is productive of higher prices for the commodity, and increased profits to the producer. Here was a sugar company, coming through a period of depression with assets unimpaired, with a book value greater rather than less, with liabilities reduced rather than increased, with a cash condition notably sound, able to survive if any sugar company might. Under these circumstances was it the part of wisdom to sell the stocks at what each month may well have seemed bottom prices? With all the advices which the trustee received from those well versed in the sugar trade and in finance, and those experienced in the vagaries of the Stock Exchange, counseling delay, how can it be said that it was negligent in omitting to make prompt

disposal of the stocks? Under the circumstances, we think that the trustee, as the event has proven, was guilty, at the very most, of an error of judgment, in not making sale of the stocks at an earlier date. It may have been deficient in prevision and prophesy; it was not lacking in the exercise of care. Therefore, even if the immunity from liability provided for by the testator does not cover the case, we think that there has been no fault and that it was error so to find.

The order of the Appellate Division should be reversed and the decree of the Surrogate's Court modified by striking therefrom the provision surcharging the accounts of the trustee, with costs to the appellant in all the courts payable from the fund.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.