In the Matter of the Estate of JULIA M. WATSON, Deceased.

Surrogate's Court, Oneida County, June 21, 1938.

*Arthur N. Gleason,* for the petitioner.

*O. Gregory Burns,* for Frederick W. Millard.

*Kenneth W. Fuller,* special guardian.

RINGROSE, S.   Julia M. Watson died in the city of Utica on January 29, 1927.   Her will, dated on April 28, 1917, was admitted to probate by a decree of this court, entered on May 6, 1927, and letters testamentary thereupon issued to Cornelia E. Williams, one of the named executors.   The executrix is the only child of the testatrix.   Sterling A. Millard, the other named executor, renounced his appointment as such on the proceeding for the probate of the will.

The executrix, who is also the life tenant of the greater part of the estate of which the deceased died seized and possessed, continued to act as executrix hereof up until August 25, 1937, at which time she was adjudged an incompetent.   This is a proceeding for the settlement of her account by Robert U. Hayes, who was appointed her committee on February 10, 1938.

Objections to said account have been filed by Frederick W. Millard, one of the remaindermen, wherein it is sought to surcharge the account with the depreciation in value of certain securities which were taken over by Cornelia E. Williams as executrix and life tenant, and which constituted a part of the decedent's estate at the time of death.   The securities consist of fifty shares of the

capital stock of Norfolk and Southern Railway Company, originally inventoried at $39.62½ per share; sixty-three shares of the capital stock of Utica Steam and Mohawk Valley Cotton Mills, originally inventoried at $90 per share, and twenty shares first preferred stock of the United States Rubber Company, originally inventoried at $107.25.

The only evidence upon which to predicate negligence or the lack of care and prudence that might reasonably be required of the executrix and life tenant in the instant case was proof of the value of these stocks as of May 6, 1928, November 6, 1928, August 25, 1937, October 2, 1937 and February 28, 1938, being one year, eighteen months, the date of the appointment of the now acting committee, and the commencement of this proceeding, respectively.

The fifty shares of the capital stock of the Norfolk and Southern Railway Company, inventoried at 39⅝, were valued at 45 bid, 48½ asked on May 6, 1928; 36 bid, 41 asked on November 6, 1928; 2⅜ bid, 2⅞ asked on August 25, 1937; 1⅜ bid on October 2, 1937; ¾ bid, 1⅛ asked on February 10, 1938. The sixty-three shares of the capital stock of the Utica Steam and Mohawk Valley Cotton Mills, inventoried at $90 per share, were valued at 100 on May 4, 1928; 90 bid, 98 asked on November 6, 1928; 62 on August 25, 1937; 55 bid, 60 asked on October 2, 1937; and 20 bid, 30 asked on February 10, 1938. The twenty shares of first preferred stock of the United States Rubber Company, inventoried at $107.25, were valued at 79¾ bid, 80⅞ asked on May 6, 1938; 69 bid, 69¾ asked on November 6, 1928; 93½ on August 25, 1937; 72 on October 2, 1937, and 58¼ bid, 59 asked on February 10, 1938.

Subsequent to the commencement of this proceeding, the court appointed a special guardian for the incompetent executrix. On the occasion of the first hearing, there were numerous items in the account which were objected to, due to the inability of the committee of the executrix to locate records and vouchers that would ordinarily be in the possession of the executrix in the management of the estate. After an exhaustive investigation made by the special guardian, many of the objectionable items of the original account were eliminated and this account has been superseded by an amended and supplemental account, subsequently filed. Also the committee of the executrix subsequent to the first hearing discovered numerous canceled checks and vouchers which have also materially eliminated the difficulty encountered in explaining many discrepancies in the account. Amended objections were thereafter filed to the amended account and the issues have been thus narrowed

to a determination of the liability of the estate of the executrix for the shrinkage in value of the aforesaid stocks.

It is the contention of the objectant that the executor and life tenant in the instant case is chargeable with the same degree of care and prudence as is required of a trustee of a statutory trust and, therefore, was required to convert the assets of this estate into securities legal for trust fund investments. The will does not indicate any such intention on the part of the testatrix. While a statutory trustee is governed in the investment and reinvestment of the corpus of the estate by law, the life tenant in the instant case derives her authority from the instrument creating the life estate and her limitations are imposed from the same source. The terms of the will under consideration indicate an intelligent understanding by the testatrix of the distinctive features of an annuity, a trust, and a life estate, as all three are found in this testamentary document and all three methods are employed by the testatrix for the purposes suitable to the results sought to be accomplished.

Of particular significance in connection with the attempt to surcharge in this proceeding is the direction in the provision of the will of the testatrix creating a trust for the benefit of her sister, Jeanette Millard Gilbert, that the trustee therein named invest the corpus of the trust and keep same invested in legal interest-bearing securities. Had the testatrix intended to impose upon the life tenant the same restrictions, it is believed that she would have so stated.

In the case at bar, as in all cases of this nature, the intent of the testator as gathered from the testamentary instrument as a whole is the milepost from which to measure the liability of the life tenant as custodian of the estate and as trustee of the remainder for the benefit of the remaindermen.

Some confusion exists as to the application of law to the situation here presented, due to the fact that the life tenant is also the executrix and failed to account as such up to the time of the commencement of the present proceeding by her committee. There is some authority to the effect that where two or more of these fiduciary functions co-exist at the same time and no point of time is fixed in the testamentary intention at which one function should end and the other begin, the duty of the executor continues. (*Matter of Flint*, 148 Misc. 474, 483; *Matter of Schliemann*, 259 N. Y. 497.)

However, no authority has been found to justify a surcharge against a life tenant, who is also the executrix, on that basis alone. The testatrix was entirely within her rights relative to the testamentary disposition of property to absolve the life tenant from

responsibility incurred by reason of depreciation or loss in the retention of securities received by her as a part of the corpus of the life estate, when such loss was not due to willful negligence, neglect or conversion.

The language of that provision of the will wherein the life estate was created, is important in the consideration of the question here involved. It is in the following language:

" *Third.* All the rest, residue and remainder of my property real and personal I give, devise and bequeath to my daughter Cornelia E. Williams to have and to hold for and during the term of her life. From and upon her death I give, devise and bequeath the use of my house at Clayville with the furniture and ground pertaining thereto together with the income of Five Thousand Dollars ($5000.00) to my said sister Jeanette Millard Gilbert, to take, hold and enjoy during her life. The balance of my said Estate upon my said daughter's death I give, devise and bequeath to the Oneida County Trust Company of Utica, New York for and during the life of my said sister Jeanette Millard Gilbert in Trust, to invest and keep the same invested in legal interest bearing securities, and to pay over the income thereof at least semi-annually to my nephews and nieces, children of my brothers William and Arthur Millard in equal shares per capita and not per stirpes."

The phraseology employed by the testatrix in the first sentence of this paragraph are words of gift direct to the life tenant. The intent that the corpus is to be delivered in kind is manifest. There is no direction to either the executor or the life tenant to sell or to convert the corpus of the estate into securities legal for trust fund investment. Had not the executor and the life tenant been one and the same individual, ample authority exists to justify a transfer of the corpus of the estate to the life tenant in kind. (*Matter of Rowland*, 153 App. Div. 327; *Matter of von Kleist*, 265 N. Y. 442; *Matter of Hamlin*, 141 App. Div. 318.)

The rule in *Matter of Hamlin* (*supra*) is applicable in principle to the facts in this case and the failure on the part of the life tenant to account as executor does not alter the rule. (*Matter of Read*, 141 Misc. 716.)

The problem thus evolved for ultimate determination is whether the life tenant, as constructive trustee or custodian of the corpus of this estate for the remaindermen, has acted in good faith and exercised that degree of care and diligence in the management as would a reasonably careful and prudent person of ordinary intelligence, circumstanced as was the life tenant.

There is no evidence before the court of bad faith on the part of the executrix and life tenant. Depreciation alone is the only evidence from which the lack of due diligence and prudence may be inferred and upon which to predicate a surcharge. A distinction exists between a situation where the trustee has reinvested in non-legal securities and a case where they are received as part of the estate of the testator and retained. (*Matter of Weston*, 91 N. Y. 502; *Matter of Mercantile Trust Co.*, 156 App. Div. 224; *Matter of Clark*, 257 N. Y. 132.)

In *Matter of Clark* the court stated (at p. 136): " Self-evidently the purchase of a speculative stock by a trustee is one thing; the retention of such a stock awaiting the arrival of a favorable opportunity to sell, is quite another; the former would constitute negligence; the latter, regarded prospectively, might be prudent, although in retrospect it might seem to have been a grievous error. Furthermore, the distinction between negligence and mere error of judgment must be borne in mind. ' Trustees acting honestly, with ordinary prudence and within the limits of their trust, are not liable for mere errors of judgment ' (per LINDLEY, J., in *Matter of Chapman* [1896] 2 Ch. 763, at p. 776); a trustee should not be held liable ' for unfortunate results which he could not be expected to foresee and was powerless to prevent.' (*Ormiston* v. *Olcott*, 84 N. Y. 339, at p. 347.) "

It is true that the securities retained by the life tenant are in a sense of a speculative nature, which is true to a varying degree of all common and preferred stock. However, they were received as part of the corpus of the estate. Under the terms of the will there is a clear inference that their disposal was wholly within the discretion of the life tenant. In the absence of bad faith or negligence on the part of the life tenant in the retention thereof, there is no justification to surcharge her estate for the resulting loss, because of mere error of judgment. (*Matter of Clark*, *supra*; *Matter of Baldwin*, 157 Misc. 692; *Matter of Winburn*, 140 id. 18; *Matter of Pratt*, 143 id. 751; *Matter of Sprong*, 144 id. 293; *Matter of Chaves*, 143 id. 868; affd., 239 App. Div. 900; *Matter of Kent*, 146 Misc. 155, 159; *Matter of Langdon*, 154 id. 252; *Matter of Flint*, *supra*.)

The objectants place particular stress upon the decision in *Matter of Baker* (249 App. Div. 265). The executor in that case was a local bank. It appealed from a decree of this court, wherein it was surcharged with the depreciation of securities not legal for trust fund investment. The court stated (at p. 267): " A distinction must always be borne in mind between the acts of a trustee in making an investment of trust funds, and his failure to promptly

dispose of securities received from the donor of the trust. The former might easily constitute negligence, where the latter, regarded prospectively, might be wise and prudent, although in retrospect it might appear to have been a grievous error. (*Mertz* v. *Guaranty Trust Co.*, 247 N. Y. 137, 144; *Matter of Clark*, 257 id. 132, 136, 137.) "

In that case the court also distinguishes between the facilities of the executor as a bank and of an individual in these words (p. 269): " Nevertheless, a bank has certain advantages over an individual in determining the wisdom of retaining or disposing of securities belonging to an estate. It not only has its trust officer, who is supposed to be more or less familiar with market prices of securities, and whose business it is to be posted concerning market conditions, but over the trust officer are the officials of the bank, and the directors, men of affairs, assumed to be chosen because of their sound business judgment. The advice of these men is at the disposal of the trust officer."

In the *Baker* case the executor retained speculative securities from May 14, 1923, until June 13, 1931, during which time they depreciated from $100 to approximately $1 per share. The appellate court recognized the rule that the burden of showing negligence rests on the objectors, but found from the circumstances present in that case that the objectants had made out a *prima facie* case by proof of the depreciation in the absence of any explanation on the part of the bank for its failure to dispose of the securities.

In the case at bar there is a clear inference in the will that the disposal of the securities was to be left to the discretion of the life tenant. Proof of depreciation standing alone would not establish a *prima facie* case of negligence. There must be some evidence on the part of the life tenant of failure to exercise that degree of care and diligence that a reasonably careful and prudent person of ordinary intelligence would have exercised in a like situation in the conduct of his own affairs. In the absence of any evidence tending to establish that fact, the objections to the account must be dismissed.

Decreed accordingly.