JONES *et al.* v. JONES.

(*Supreme Court, General Term, First Department.* November 23, 1888.)

1. TRUSTS—LIABILITY OF TRUSTEE—INVESTMENTS.
   A testator bequeathed to executors certain sums, to be invested in trust for his children within the discretion of the executors. Among his assets were certain mortgages and bank stock, which were afterwards set apart by the trustees to each of the trust funds. Afterwards actions were begun to foreclose the mortgages for non-payment of interest, and the property was bought in by the trustees. A prior mortgage on the premises was assumed by the trustees, and a new mortgage executed by them. *Held* that, although the original investment was injudicious, this was the act of testator, and the conduct of the trustees in retaining the investments and foreclosing the mortgage and purchasing the property was not so unreasonable as to make them personally liable for the losses arising from depreciation, and that the trustees should be credited with the expense of foreclosure and taxes and expenses paid on the mortgaged property.

2. SAME—RATIFICATION BY CESTUI QUE TRUST.
   A testator bequeathed to executors certain sums, to be invested, within their discretion, in trust for his children, and afterwards the trustees set aside to each fund certain mortgages and bank stock, the assets of the estate, which afterwards depreciated, and losses occurred. When the division took place the respondent *cestui que trust* was a child, and on her marriage she assumed charge of the mortgaged property set apart to her, and which had been bought in by trustees at foreclosure. *Held,* that what she said or did during her minority would not estop her from demanding an accounting, and, as it did not appear that she had full knowledge of all the facts when taking charge of the property, she would not be estopped from asserting any right in regard thereto.

3. SAME—ACCOUNTING—EVIDENCE—SUFFICIENCY.
   On an accounting by a trustee, the referee held that certain checks produced, and proved by the trustee to have been paid by him to his *cestui que trust,* were given, not in payment on account of the trust fund, but as rent of certain real estate which *cestui que trust* owned, and for which the trustee collected the rent. The evidence showed that personal checks were given by the trustee to the *cestui que trust* when there was a balance of rent in her favor, and that his payments kept a little behind the net receipts for rent. *Cestui que trust* testified that the checks were for the rent, and were intended to be on account of it; and the trustee's denial of these statements was evasive, and he made no attempt to show in what way he had accounted for the rents. *Held,* that the evidence sustained referee's holding, and that his disallowance of the amount was proper.

4. SAME—TAXES.
   When money for the payment of taxes on trust property is accessible, either from the estate, or could have been obtained on its credit, the interest upon the unpaid taxes, and imposed as a penalty, should be charged to the trustees.

5. SAME—INTEREST.
   On an accounting by a trustee, when the chief complaint is that he had held assets that were not as valuable as supposed, but which were purchased and held by the testator, and nothing is shown charging the trustee with gross dereliction of duty, or that he used the trust funds in his own business, or made any gain or profit therefrom, he should not be charged with interest, with annual rests.

Appeal from surrogate's court, New York county.

Action for an accounting by Oliver L. Jones and John Lyon Gardiner, trustees, etc.   Oliver H. Jones left him surviving Louisa L. Jones, his widow, and five children, to-wit, Oliver L. Jones, Elizabeth Coralie Gardiner, Rosalie Adele Jones, (now Oakley,) Lilian L. Jones, and Martha Louise Jones, (now Rutherford.)   In and by his will Oliver H. Jones, among other things, provided as follows: "*Fourth.*  I give, devise, and bequeath to my executors hereinafter named the sum of twenty five thousand dollars for each of my children who shall be living at my decease, to have and to hold the same in trust for the benefit of my said children severally and respectively, such child to have the benefit of one of said sums of twenty-five thousand dollars; and the trust upon which my said executors are to hold the same is as follows, namely, to invest the said several sums in such property or securities, real or personal, as they in their discretion may deem most advantageous, and to sell and reinvest the same, and change the securities from time to time as they shall think fit, and to receive the income of the said several sums, and to apply the same to the use and benefit of such children severally during their respective minorities, and, as soon as each child shall become of age, then and thereafter to pay over to such child the income of his or her share, in quarterly payments, for and during his or her natural life; the income of the shares of my daughters to be paid to them free from the control of any husband."   By a further provision of this will, the residue of the estate remaining after the payment of his debts, a provision for his wife, and the establishment of the foregoing trusts was directed by the testator to be divided between his children, share and share alike.   By this will and a codicil Oliver H. Jones appointed his wife, Louisa L. Jones, and these appellants, Oliver L. Jones and J. Lyon Gardiner, to be the executors of his will.   Letters testamentary were issued to Louisa L. Jones and J. Lyon Gardiner, March 25, 1871, and to Oliver L. Jones, May 24, 1871.   The respondent, Lilian L. Jones, became of age, March 17, 1881.   Louisa L. Jones died in the spring of 1876.   Among the assets of the estate of Oliver H. Jones were five second mortgages, made by one Reeder, each covering one of five adjoining houses on East Thirty-Fourth street, in this city; four being for $4,000 each, and one for $5,000.   These mortgages were purchased by the testator before his death,—he considered them good investments; and on the testator's advice, as well as on his own judgment, the appellant Gardiner at the same time purchased a similar mortgage on the adjoining house.   On the 10th May, 1871, the executors of Oliver H. Jones made a division in kind of the assets of the estate among those entitled, setting apart certain of the securities to each of the several trusts.   In this division the valuation of the different stocks was taken from a printed list of sales at the stock board, the different mortgages were taken for the most part at their face value and interest, and one of the Reeder mortgages was set apart and apportioned to each of the five trusts established for his children by the testator, including that for the benefit of the petitioner.   In September, 1871, an action was commenced to foreclose four of these five mortgages for non-payment of interest, and in each case the property was bought in by the trustees, including that covered by the mortgage assigned the petitioner, and a judgment for a deficiency taken against the mortgagor.   The premises were subject, however, to a prior mortgage of $5,000, and this was assumed by the appellants, and subsequently a new mortgage was executed by them for that amount. After this purchase, during her life-time, Mrs. Louisa L. Jones collected the rents of this property, and after her death, and until June, 1881, the rents were collected by the appellant Gardiner, and subsequently by the respondent herself.   Besides the Reeder mortgage, there was set apart from the assets of the estate, to the trust in favor of the petitioner, among other things, 28 shares of stock in the Phœnix Bank; 20 shares of stock in the Nassau Bank; 20 shares of stock in the Merchants' Exchange Bank; and 10 shares of stock in the Marine Bank.   There was afterwards a loss on this stock aggregating $678.86.

On this accounting the referee held (1) that the terms of the will did not empower the trustees to set apart to or accept for the trust fund, or to invest the trust moneys in any securities other than those ordinarily required by law for the investment of trust funds; (2) that the investment in the Reeder mortgage and in the above-mentioned bank stocks were not proper investments for the trust, and that the losses therein should not be charged against the trust fund, but that the same should be borne by the appellants; (3) that the purchase of the property, covered by the Reeder mortgage at the foreclosure sale, was improper, and that the trustees are chargeable with the loss of income that resulted; (4) that the trustees are not entitled to credit for the expenses of the foreclosure of the Reeder mortgage, nor for the taxes and expenses paid upon the property subsequent to its purchase, nor for the interest paid by them on the first mortgage. The referee also held that certain checks produced and proved, and amounting to $4,430, which had been paid to the petitioner, were given not in payment on account of the trust, but as rent of certain real estate which the petitioner owned; and disallowed the payment of $884.52, which was claimed to have been made on account of the trust-estate,—the appellants' present exceptions covering these various findings.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*S. Jones* and *J. Langdon Ward*, for appellants. *John S. Davenport*, for respondent.

BRADY, J., (*after stating the facts as above.*) The study of this case has not been an easy, but a difficult, one. The referee, in an elaborate and learned opinion, has expressed, and in the main sustained, his views, and they have again been adopted by the learned surrogate, upon due consideration, with one exception. The difficulty of review arises from the multitude of facts, figures, and circumstances in which the record abounds, examined with reference to the numerous findings and the various exceptions taken and presented for consideration, and the involved method in which they were submitted by the appellant. If, upon such an examination, results differing from those arrived at in the court below shall be proclaimed, it may be that errors will be made, but the duty of review is imposed, and must be performed. The case is certainly one in which the ceremonies of the trial must be more impressive and more valuable upon the facts, at least in some respects, than the review, from the great advantage of hearing the witnesses, and gathering and grouping the facts as they were stated.

Beginning with the finding in regard to the Reeder mortgage, it is thought that the referee was not justified in charging the appellants with the loss attendant upon its presence as an asset. It was not selected by them, but formed a part of the estate which was divided, and without unnecessary expense, as we have seen. The testator had made the investment in these mortgages, and they must either have been sold, or divided and set apart to the trusts, for which they were sufficient in number. Without reference, therefore, to the power given the trustees to invest in such property or securities as they in their discretion might deem most advantageous, and without, therefore, invoking it for their benefit, the appellants were not chargeable with the loss on the Reeder mortgage, unless the circumstances show affirmatively that they acted in an unreasonable manner in retaining it, and that the failure to sell was unjustifiable. *McRae* v. *McRae*, 3 Bradf. Surr. 199. Here it must be borne in mind that the *cestuis que trustent* were treated all alike, and none benefited at the expense of the others; five mortgages of like character having been found as part of the estate, and appropriated in making the division. What would have happened as to the pecuniary result, had the mortgages been sold, does not appear; whether, for example, it would have been more advantageous to have sold than to have retained them. There is a great difference between an investment by the trustees of moneys forming a part of

the estate, and the retention of securities purchased by the testator, and held by him at the time of his decease. In the one case the investment, whether wise or unwise, is the independent, uncontrollable act of the owner; and in the other it is the act of the trustees, whose discretion is limited and whose duties are prescribed; and each is to be subjected, therefore, to wholly different rules, if, indeed, the act of the owner is subject to any rule whatever. The referee places his conclusions upon *King* v. *Talbot*, 40 N. Y. 76; *Adair* v. *Brimmer*, 74 N. Y. 539; *Hun* v. *Cary*, 82 N. Y. 65; and *Ormiston* v. *Olcott*, 84 N. Y. 343. In all these cases except the last the investment was made by the trustees, and the last has no application, except so far as it recognizes the rule established in the first, which requires, it would seem, investment, when made by the trustees, to be made in federal or state securities, or in bonds and mortgages within the state. We are not dealing with facts, therefore, that make the principles of these cases applicable. The liability of the appellants rests upon different principles, as already suggested, involving unreasonable conduct in failing to sell or to act. Was the conduct of the appellants such as to warrant such a conclusion? In the spring of 1871, March and May, letters testamentary were issued to them. In February, 1872, upon the Reeder mortgage, assigned to the respondent, a judgment of foreclosure was obtained, but in an action commenced on September, 1871, for the nonpayment of interest, and the property conveyed by it purchased. This was less than one year after the letters were issued. It is true that interest was due upon it at the time the letters were issued, but the mortgage was allowed to remain, on the constant promise of the payment of interest and settlement, which it was hoped and believed, it would seem, would take place. This course of conduct is often adopted by prudent men, and especially if the security be of doubtful value. It does not, therefore, follow that it was unreasonable, unjustifiable conduct in failing to foreclose at an earlier date, under these circumstances, from the mere delay which occurred. Something more than this should be shown to warrant such a finding. Even trustees, although circumvented by stringent rules, are not expected to be guarantors against any misfortune in the management of their trust. They must, it is true, be vigilant and prudent, but in the sense in which these qualities are developed by human beings ordinarily gifted. In *Re Gray*, 27 Hun, 455, (decided in this department,) the time allowed within which to sell securities was declared on authority to be one year, although that rule was not universal, and cases were cited in which a more extended period was allowed. In that case stock which was part of the estate was held on a falling market in hope of improvement, which came, but not to the extent anticipated, and the executors held it for further advances. This was unfortunate, for the shares fell considerably in value; but the court held that it could not be said that they had acted improperly, for their conduct was such as prudent, cautious, and intelligent business men would have deemed to have been proper if they had been managing their own affairs. The purchase of the property herein made was made, no doubt, with intent to avert loss, and was such an act as prudent and cautious men would commit. The object in view was a good one, and was founded upon an investment made by the testator, who not only believed in the security, but, as already suggested, induced the appellant Gardiner to make a similar one. There is no pretense that the appellant derived any benefit whatever from it,—not the slightest,—upon the record. In *Hogan* v. *De Peyster*, 20 Barb. 117, it was said of the security there considered: "This is not a new investment." The case of *Ackerman* v. *Emott*, 4 Barb. 626, shows the distinction between the two cases, and that an executor is liable for an unauthorized investment in bank stock, but admits that he is not liable for permitting such investments made by his testator to continue. In *Thompson* v. *Brown*, 4 Johns. Ch. 619, the administrators permitted the business to be carried on as they found it, and it was held not to be a new and

distinct original trading with the assets, voluntarily entered into by them, entailing personal responsibility; and in *Brown* v. *Campbell*, 1 Hopk. Ch. 233, the chancellor sustained the exchange of the notes of the Union Cotton Manufactory for the stock of the Otsego Cotton Manufactory, the investment not having been made by the personal representative. These cases illustrate, in connection with the others cited, the distinction between existing and new investments; and sustain the proposition that the retention of the former, even by a change in the form of them, will not entail a personal responsibility, unless the conduct of the trustees is unreasonable and unjustifiable. It must be borne in mind, also, that after the foreclosure and purchase Mrs. Jones, who had been appointed the guardian of the petitioner, collected the rent of the property purchased. The original investment, it cannot be denied, was injudicious, but this was the act of the testator, and a similar one was made by the appellant Gardiner under his advice.

It is insisted on behalf of the appellants, further, that, assuming the Reeder mortgages to be an invesment, it was authorized by the trust, which vested a discretion in them, and that it was ratified by the petitioner. It is not deemed necessary to consider either of these propositions at great length. It may be enough to say of them, generally, that the referee has shown satisfactorily that the assumed ratification cannot be sustained on the facts nor upon the law. When the division was made in 1871, the petitioner was a child, and what she said or did during her minority, even if it were based upon a full knowledge of her rights and the acts of the appellants, would not estop her from demanding an accounting. Upon her arriving at maturity she took possession of the property purchased upon the foreclosure, but it does not appear that she had been advised of the facts relative to its acquisition, and knew nothing of the character of the Reeder mortgage, or the mortgage subsequently given by the trustees as a result of the purchase. It is true that in 1881, in which year, and on the 17th March, she became of age, she began proceedings against the appellants for an accounting as executors, and that they filed an account in September of that year; and, further, that these proceedings were amicably settled in December following, when she was given some, if not all, of the securities mentioned in the account as having been set apart for her when the division took place during her minority, in 1871. The account does not disclose all the facts. There is nothing in it to show the condition and value of the assignment of the Reeder mortgage, and the changes made by its foreclosure, and the sale and purchase of the property covered by it. She had then lately received a memorandum from the appellant Gardiner, stating that the mortgage held for her trust was $25,000, and thus an indication, upon which she could rely, that the amount to be set apart for her was intact. She was evidently then in ignorance of the facts in regard to the Reeder mortgage, and was not estopped, therefore, from asserting any right in regard to it. Actual and full knowledge is indispensable, and, after that, the act invoked must be clear and unequivocal, fairly indicating an intent to affirm the transaction. 2 Pom. Eq. Jur. § 809; *Boerum* v *Schenck*, 41 N. Y. 182, 190. The knowledge must be of all the material particulars and circumstances, and the *cestui que trust* must be fully apprised of the acts ratified, and of her legal rights in the matter. *Adair* v. *Brimmer*, 74 N. Y. 554. Indeed, it is said in that case: "All that is implied in the act of ratification, when set up in equity by a trustee against his *cestui que trust*, must be proved, and will not be assumed." These views were expressed by the referee, and are adopted as conclusive upon the question considered. In the conclusion arrived at, however, in regard to the liability incurred by the appellants as to the Reeder mortgage, these questions as to them are not so material. That relating to the assumed ratification is considered, nevertheless, in detail, although the other is not, as it is thought to be unnecessary, in order to assert that herein the appellants are relieved only for the reason that the original investment was made by the

testator, and the consequences resulting from that incident did not impose responsibility upon them, under all the circumstances of the case.

These observations apply as well to the bank stock which was kept, and upon which a loss occurred. They were part of the assets, and were divided and held in the trust. The conduct of the appellants in not selling them was not unreasonable or unjustifiable, within the rules of the cases referred to. It follows that the loss on the bank stock was not properly chargeable against the appellants personally, and should be borne by the trust; and also that the trustees should be credited with the expenses of the foreclosure, and the taxes and expenses paid upon the property, except as hereafter stated, subsequent to its purchase, and as well the interest paid by them on the first mortgage.

In reference to the item of $4,430, disallowed by the surrogate, the referee makes the following statement in his opinion: "There is a conflict in the testimony regarding them. It seems that, at the time they were paid, Dr Jones had charge of real estate to one-fifth of the net income of which Miss Jones was entitled. She says she received the checks personally from Oliver L. Jones; that he told her they were for rent of property on Broadway and Fifty-Ninth street, and she always understood it so; that when she asked for more money Dr. Jones always said that the Broadway property was not bringing more than the amount thus paid her, $200 a month; that that was her income. Dr. Jones flatly denies making these statements. The checks were drawn against his private account. The stubs from the check-book contain only the bare entry of date, name, and amount. He further testified: 'I didn't pay her the rents on the Broadway property specifically at any time. What she has received has been on account. She wanted about $200. That was what she wanted a month,—about $200. All that she received was on account generally.' By stipulation the real estate account is produced for the purpose of deciding the question only. The petitioner is entitled to one-fifth of the net rents. It appears from a tabulation of balances due for rent over expenses, and of checks paid, that Mr. Jones began to give her these checks when there began to be a balance of rents in her favor, and that his payments by check kept a little behind the net receipts for rents. This corroborates Miss Jones, and tends to show that the checks emanated from the real estate, and were intended to be on account of it. It is most striking that after she became of age, and had instituted proceedings against her brother as executor, and he had filed an account,—in short, at a time when she was looking into her affairs,—he should have given her the last and largest of these checks, October 8, 1881, $680, and that this is within $20, as I figure it, of the net amount due her on account of these rents. It looks to me like a payment intended to settle up that account to date; and on the whole testimony I must conclude that the checks were paid on account of the real estate, and not on account of the trust."

No error seems to have been committed by the referee in treating the $4,430 as an amount of payments made by the appellant Jones to the respondent on account of her share of the rents of the real estate, and refusing to allow him to charge the same against the trust fund. A critical examination and analysis of the rent account confirms the substantial accuracy of the tabulation appended to the points submitted on her behalf. That tabulation shows that the payments in question began soon after the rent account exhibited a balance in her favor, and continued to be made in installments more or less closely representing the amounts due to her thereon, until such time as she assumed the charge of her share of the realty, and received the rents, with the appellant's intervention; at which time the latter paid her an unusually large sum, approximating with sufficient closeness to the amount then actually due to her on the rent account to justify the referee's conclusion that it was made for the purpose of balancing the same. These circumstances, taken together, raise a strong presumption in favor of the correctness of the

referee's reasoning; and this is still further corroborated by the respondent's testimony that she always understood these payments to have been made on account of rents.  The testimony of the appellant Jones in no way tends to rebut this presumption.  It is evasive and unsatisfactory, and by no means amounts to a denial of the fact that these payments were so made.  He says: "I didn't pay her the rents on the Broadway property specifically, at any time, —not specifically; what she has received has been on account.  She wanted about $200; that was about what she wanted a month,—about $200.  All that she received was on account generally."  And this is virtually what the respondent claims.  It is nowhere contended that the appellant Jones paid her, at any time before the closing of the account, the specific sum then actually due her, but that from time to time he made payments "on account generally," ceasing with the sum before mentioned, apparently the amount then due her, after which she collected the rents herself.  The fact that these payments were made by his individual checks tends also to confirm this conclusion.  In the most favorable view that can be taken of his testimony, all that can be claimed from it is that the $4,430 was paid on account, to be applied both to the rent account and to the trust fund.  Setting aside any inquiry as to the questionable conduct of the appellant Jones in mingling two entirely distinct and separate accounts, it would seem to be totally unjustifiable for him to charge against the trust fund a sum which in part, at least, upon his own admission, was paid on account of rent.  Had the fact so been, it would have been easy for him to show in what way, other than by the checks in question, he had accounted to the petitioner for the Broadway rents.  His failure to do that is to my mind further corroboration of the correctness of the express ruling on this branch of the case.  The effort on the part of the appellants' counsel to weaken the force of the circumstances surrounding these transactions fails, it may be said, without disrespect, of any purpose beyond that of making "confusion worse confounded," if the merits of this appeal are properly appreciated.  The fact that other payments, from other sources, were made to the petitioner during the period covered by the checks under consideration, has no bearing upon the question at issue.  The Broadway rents were received by the appellant Jones, and it was his duty to account for them to the petitioner individually, and not as trustee; and it is impossible to resist the conclusion, upon the whole case, that his individual checks, substantially coincident as to amount, and coeval in point of time, were given for that purpose, and for that purpose only.  The accounts generally seem to have been kept with such a lack, not only of method, but of intelligibility, that the appellants have no just cause to complain if they suffer disadvantages from that circumstance.

The case, it must be further said, does not disclose any reason why the interest upon the unpaid taxes upon the Reeder property, and which was imposed as a penalty, should not be borne by the appellants.  The money to pay the taxes was accessible either from the estate, or could have been obtained in its credit.  These items, therefore, should not be allowed to the appellants, but charged against them.  In this respect the decree must with others be modified.

The charge of interest with annual rents does not seem to be warranted.  The division of the estate among the several beneficiaries was made by the appellant at an early day, and, so far as the record discloses their acts, it was done in good faith.  The chief errors apparent, and of which complaint is made, were in holding assets that were not as valuable as supposed, but which were purchased and held by the testator.  The principles governing the allowance of such a penalty are not presented here.  The facts differ materially from those which influenced the judgment of the court in *Cook* v. *Lowry*, 95 N. Y. 103.  The court said that the case presented by the evidence and by the findings exhibited gross dereliction of duty; the trustee keeping no ac-

count of the fund or the income, and using the securities of the trust in his own business, changing them from time to time for his own benefit, and rendering no account of his realizations. Here there are, as already suggested, no such incidents. The learned referee, starting from assumed misconduct, was naturally led to the conclusion which such an element would warrant perhaps, and hence the imposition of the punishment by allowing interest with annual rests. In *Schiefelin* v. *Stewart*, 1 Johns. Ch. 620, the learned chancellor, upon a full consideration of the subject, determined, as stated in the syllabus of the report, that a trustee was not allowed to make any gain, profit, or advantage of the trust funds, or to convert the trust moneys to his own use, or employ them in his business. If he did the latter acts, or either, he could be subjected to the payment of compound interest. If he negligently suffered the trust moneys to lie idle, he was chargeable with simple interest only. This case has not been questioned or disturbed, and the rule declared has not been enlarged. The appellants should have been charged only with simple interest on any of the sums allowed against them, where annual rests were declared proper by the referee, and granted. The decree must be modified in this respect.

This disposes of all the exceptions which are available to the appellants, although it does not embrace a statement in detail of all those presented for consideration. Many of them result from rulings which have been rejected by the views herein expressed, and some of them, after earnest hunts indulged in, over and over again, for meritorious support, have been abandoned as worthless. The details of the record; the double sets of accounts; the numerous exceptions; the series of figures and calculations dotted over the appellants' brief,—have let to numerous examinations of the case, causing its retention and consideration for a longer period than usually allotted to such controversies; but the delay has arisen from a struggle to fully comprehend all the varied elements and antagonisms assumed by the appellants, and gainsaid by the respondents, and to dispose of the appeal so that no injustice would be done to either party. Whether this has been accomplished or not, however earnestly desired, remains to be seen from the subsequent history of the case. The judgment appealed from must be corrected in accordance with these views, and, if the parties cannot agree, it will be referred back to the referee, that he may adjust the liabilities according to the modifications declared to be necessary herein. If this course, however, be one which it is supposed will lead to delays, then the subject may be entertained and disposed of on a settlement of the order to be entered herein, and by me, on due notice. Ordered according to these views.

Van Brunt, P. J., and Daniels, J., concur.