In the Matter of the Estate of EUGENE S. BOOTH, Deceased.

Surrogate's Court, New York County, April 20, 1933.

*Howard MacCartney*, for the executor.

*Kathryn A. Wendel*, special guardian.

354

DELEHANTY, S. By his will the above-named deceased provided among other things: ' I authorize and empower my Executor and Trustee, herein after named, to retain any or all investments which may come into his hands as Executor or Trustee by virtue of this my Will in the form and condition in which it may be at such time, any law to the contrary notwithstanding, and I hereby declare and it is my Will that said Executor and Trustee shall not be restricted to the investments provided by law in which Executors or Trustees may invest, but shall have full power and authority to invest in any securities, stocks, bonds or other investments which in his judgment are safe and for the best interest of my estate."

Testator died February 9, 1931. Letters testamentary were issued on April 10, 1931. The account filed covers the period from the date of death to April, 1932. The special guardian asks to have the executor surcharged with actual losses in respect of sales of two blocks of securities and also with the loss accrued, but not realized, by reason of the retention of certain other securities which have depreciated substantially in value.

So far as objection by the special guardian is made respecting the loss of $345 realized on the sale of 170 Super-Corporation of American Depositaries, Inc., certificates, it is overruled. So far as objection is made by the special guardian respecting the shrinkage in value in mortgages and mortgage certificates and bonds secured by mortgages, such objection is likewise overruled. The evidence shows that the executor consulted persons experienced in the field of these securities and reached a conclusion in good faith that the securities should be held. The fact that loss resulted is not adequate reason for now surcharging the account.

Among the assets of the estate received by the executor from the deceased were 236 so-called " old " shares and 196 so-called " new " shares of Tokyo Electric Co., Ltd., a Japanese corporation. As of the date of death these shares were appraised at $13,421.43. These shares were sold February 23, 1932, for $7,671.18, or $5,750.25 below the appraised value.

The oral testimony upon the hearing showed that the executor through its trust officers undertook diligently to examine into the respective securities of the estate as soon as letters testamentary were issued to it. In due course and on or about June 15, 1931, a tentative report on the respective securities was given to the investment committee of the executor and at that time this investment committee instructed the trust department to complete its inquiries and to prepare for the investment committee a final report for use by it at its meeting in September. Following this instruction the trust department of the executor completed its inquiries in respect

of these Tokyo Electric Co., Ltd., shares and made a full report thereon to the investment committee at its meeting in September, 1931. At that meeting the investment committee determined that the Tokyo Electric Co., Ltd., shares should be sold and a resolution to this effect was adopted. The account shows that in September and apparently without waiting for the formal resolution of the committee an actual sale was made of certain fractional " new " shares, the source of which is not disclosed. The oral testimony discloses that thereafter a trust officer of the executor consulted with the beneficiary of the trust created by the will, the widow of the deceased, and learned that her brother would probably be interested in the purchase of the shares in question and that he would soon arrive in America from some foreign place of sojourn. This brother in fact came to the United States at least as early as October, 1931, and soon after arrival communicated with the executor and stated that he was interested in acquiring the shares. No arrangement of sale to him was made but the matter was discussed tentatively. This prospective buyer said in effect that upon his arrival in Japan, where he intended going in the next few weeks or months, he would definitely decide upon the purchase and would notify the executor. The matter was left in this state until he did arrive in Japan some time at about the date of the sale, February, 1932, and thereupon a sale of the stock was made to him at the then market price in Tokyo.

Meantime and on December 13, 1931, Japan had abandoned the gold standard. The result of this abandonment was shrinkage in the dollar value of the yen. By reason likewise of abandonment of the gold standard by Japan, the current quotations of Tokyo Electric Co., Ltd., stock reached higher levels (in yen) than those quoted prior to the abandonment.

By stipulation of the parties the range in market quotations of the shares (in yen) and the rate of dollar exchange have been fixed. By reference to the schedules thus furnished, the following quotations for the shares are established (the figures represent United States dollars):

June 20, 1931........." old " shares, $35.07; " new " shares, $15.06
Sept. 12, 1931........." old " shares, 31.37; " new " shares, 12.10
Oct. 17, 1931........." old " shares, 28.45; " new " shares, 11.69
Nov. 14, 1931........." old " shares, 28.44; " new " shares, 11.66
Dec. 12, 1931........." old " shares, 24.79; " new " shares, 10.22
Jan. 16, 1932........." old " shares, 24.96; " new " shares, 10.62
Feb. 13, 1932........." old " shares, 24.14; " new " shares, 10.22
Feb. 20, 1932........." old " shares, 22.91; " new " shares, 9.65

No quotations of Tokyo Electric Co., Ltd., stock were readily available in New York city but such quotations were procurable without difficulty or delay by cable inquiry or mail inquiry to the representative of the executor at Tokyo, Japan. The executor earnestly urges that it is without fault in the situation; that it was dealing with a security for which no market was available in New York city; that it was at the disadvantage of delay in communications which required substantially thirty days each way; and that in making the arrangement which it did it was acting prudently and hence that it should not be surcharged. The court is unable to agree with this. A review of the facts shows that in practical effect the executor speculated in the retention of shares which its own investment committee had ordered sold and, in addition, that it made no effort either to ascertain market values or to procure a purchaser except through the above-described arrangement with the brother-in-law of deceased. It was shown upon the record that Tokyo Electric Co., Ltd., was a company with a very large capitalization with a great many issued and outstanding shares which were regularly dealt in on the Tokyo exchange. The arrangement with the brother-in-law of deceased was an oral grant to him of a " call " on the shares at the current market price on an indefinite date to be fixed when this brother-in-law arrived in Tokyo. If eventually he had not purchased the shares at all there was no commitment on his part which the executor could have enforced.

The special guardian asserts that the executor is at fault in not having disposed of these shares immediately after qualifying. Obviously this disposal could not have been made until after the qualification of the executor and the issuance of letters to it in April, 1931. The executor is shown to have been diligent thereafter in making inquiry respecting the company. In view of the tenor of the will and the fact that the company in question conducted its operations in a foreign country and that no market for the shares existed here, the court is of opinion that no negligence can be attributed to the executor down to September 15, 1931. As of this date, however, when the executor had completed its studies and there had been formulated and expressed by the appropriate committee of the executor the decision that the shares should be sold, there was a direct and immediate obligation upon the executor to proceed diligently to obtain a purchaser for the shares. This the executor did not do. The arrangement with the brother-in-law falls short of the performance of its legal duty to realize upon these shares.

There remains the determination of the date as of which such shares should have been sold and the proceeds realized in dollars. The securities were in the custody of the representative of the

executor, a financial institution in Tokyo, Japan. In any event there was ample time after the qualification of the executor to put the securities in form to permit immediate transfer. These securities should have been sold within a reasonable time after September 15, 1931. Giving to the executor the full benefit of all factors including distance, delay in communication and lack of current market quotations available in New York city, the court determines that sixty days, or November 14, 1931, sufficed to permit the conclusion of a sale of the shares. The sale might have been made by mid-October (as of which date the prices were substantially the same) but in all the circumstances the holding of the shares for a further thirty-day period is not held to be negligent.

As shown by the foregoing tabulation the value of the shares as of November 14, 1931, was as follows:

Nov. 14, 1931........" old " shares, $28.44; " new " shares, $11.66.

On this basis 236 " old " shares should have realized $6,711.84; 196 " new " shares should have realized $2,285.36. This would result in a total of $8,997.20 for all shares. The account shows that there was realized upon these shares only $7,671.18 leaving a net loss of $1,326.02. Against this amount must be credited to the executor the dividend received as of February, 1932, and credited in Schedule F of the account. This amounts to $204.50. Deducting this amount, leaves $1,121.51, for which the executor will be surcharged. The dividend credited is allowed to the executor because if sale had been made within the time fixed as reasonable such dividend would not have been paid into the estate. In reaching the conclusions herein stated, the court has given full weight to *Matter of Clark* (257 N. Y. 132) and *Matter of Kent* (146 Misc. 155). The court considers with entire sympathy the difficulties which have confronted fiduciaries in the handling of securities during the long-continued financial storm which has wrought havoc with financial structures supposed to be impregnable and which has stultified the expressed judgments of so-called leaders in politics, business and finance. Nothing in the opinions in the cited cases excuses the act of the executor in not realizing promptly upon the shares of Tokyo Electric Co., Ltd., after it had completed studies extending over a period of five months and after its investment committee had determined that a sale should be made.

On the contrary, the opinion in *Matter of Clark* (*supra*) states expressly that the securities in the trust there under consideration had been examined and considered by a committee of the trustee's directors at least once in every six months and, as the opinion

says, it was their judgment that the stock *should not* be sold (p. 138). In the instant case the same type of examination was made by a committee charged with the same duty and, as above stated, it decided that the stock *should* be sold. Even under the principles enunciated in the *Clark Case (supra)* liability attaches in the instant case for failure to sell within a reasonable time thereafter. Any other construction of the *Clark* opinion would expose all trusts and estates to uncompensated losses no matter how negligently incurred, if only the testator had granted discretion to his executors or trustees to hold securities owned by him at his death. It cannot be supposed that the court intended such result. If the *Clark Case (supra)* is to be declared authority for releasing from risk of surcharge a fiduciary which retains, at a loss to the estate, securities which it determines after investigation should be sold, such declaration must be made in a higher court.

The account should be recast in conformity with the foregoing and a decree submitted on notice settling the account accordingly.