In the Matter of the Judicial Settlement of the Account of Proceedings of JANE BOSSIE, as Executrix, etc., of LILLIAN BOSSIE HORTON, Who Was Guardian of ALSTON TIMOTHY HORTON, Infant.

Surrogate's Court, Bronx County, March 21, 1938.

*Ronald K. Brown,* for Jane Bossie, as executrix, etc., of Lillian Bossie Horton, deceased guardian.

*Hawkins, Delafield & Longfellow* [*C. O. Donahue* of counsel], for the United States Fidelity and Guaranty Company, surety on deceased guardian's bond.

*Aaron Greengold,* special guardian.

HENDERSON, S. This is an accounting by the executrix of the deceased guardian of the infant herein. Exceptions have been taken to the report of the referee.

On March 17, 1931, the guardian received bonds and certificates of stock in eighteen companies, which were not legal investments for fiduciaries. The learned referee has found that the guardian should have liquidated those investments within three months after their receipt and has surcharged her accordingly for the resulting loss since June 17, 1931.

The value of these non-legal investments on that date was $65,980.65. Their value at the date of the guardian's death, January 27, 1936, was $43,841.88. In addition, upon the later date, upwards of $96,000 was invested in United States, State and municipal bonds, upwards of $92,000 deposited in savings banks, about $82,000 in guaranteed mortgages and $16,000 in corporate bonds.

The guardian was required to accept the " non-legals." On the date of their receipt she found herself the fiduciary of a large estate, the income from which was more than sufficient to supply all the needs of her son. During the period of administration there was a substantial accumulation of income.

Due to the extraordinary economic conditions of recent years, and the shrinking of security values, many cases have come before the courts involving the duty, responsibility and the liability of a fiduciary. The Court of Appeals stated the rules applicable thereto in *Matter of Clark* (257 N. Y. 132, at p. 136) in the following language: " It has been stated that ' there appertains to the relation of trustee and *cestui que trust,* a duty to be faithful, to be diligent, to be prudent in an administration entrusted to the former, in confidence in his fidelity, diligence and prudence; ' that ' the just and true rule is, that the trustee is bound to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs.' ( *King* v. *Talbot,* 40 N. Y. 76, 84, 85.) The statement has been frequently approved *(Matter of Weston,* 91 N. Y. 502, 511; *Costello* v. *Costello,* 209 N. Y. 252, 261.) In determining whether the acts of a trustee have been prudent, within the meaning of the rule, we must ' look at the facts as they exist at the time of their occurrence, not aided or enlightened by those which subsequently take place ' (per PECKHAM, J., in *Purdy* v. *Lynch,* 145 N. Y. 462, 475); for it is an obvious truth that ' a wisdom developed after an event and having it and its consequences as a source is a standard no man should be judged by ' (per COLLIN, J., in *Costello* v. *Costello, supra,* at p. 262); and it is impossible to say that trustees are wanting in sound discretion ' simply because their judgment turned out wrong ' (per HOLMES, C. J., in *Green* v. *Crapo,* 181 Mass. 55, 58). We must distinguish

also between the acts of trustees in making investment of trust funds, and their acts in making or failing to make, prompt disposition of securities received from the hands of the creator of the trust. (*Matter of Weston, supra; Jones v. Jones*, 2 N. Y. Supp. 844; *Matter of Mercantile Trust*, 156 App. Div. 224; *Matter of Chapman*, [1896] 2 Ch. 763.) Self-evidently the purchase of a speculative stock by a trustee is one thing; the retention of such a stock awaiting the arrival of a favorable opportunity to sell, is quite another; the former would constitute negligence; the latter, regarded prospectively, might be prudent, although in retrospect it might seem to have been a grievous error. Furthermore, the distinction between negligence and mere error of judgment must be borne in mind. ' Trustees acting honestly, with ordinary prudence and within the limits of their trust, are not liable for mere errors of judgment ' (per LINDLEY, J., in *Matter of Chapman, supra*, at p. 776); a trustee should not be held liable ' for unfortunate results which he could not be expected to foresee and was powerless to prevent ' (*Ormiston v. Olcott*, 84 N. Y. 339, at p. 347)."

While the *Clark* case involved trustees, the law there stated is also applicable to a guardian.

The sole question here is whether or not this guardian exercised the diligence, prudence, discretion and intelligence that a reasonable person would employ in her own affairs. There is no fixed standard of time within which a guardian must liquidate " nonlegals " received. (*Matter of Varet*, 181 App. Div. 446; affd., 224 N. Y. 573; *Matter of Kent*, 146 Misc. 155.) The guardian was not required to liquidate immediately. On the contrary, it was her duty to come to a reasoned judgment as to whether to sell or to hold. Through her brother, she consulted with Wood, Struthers & Co., members of the New York Stock Exchange, who wrote Mr. Arthur Bossie, the brother, with reference to the questioned investments on April 9, 1931. They advised against the sale of any of the stocks except Chicago & Northwestern, common, an insignificant part of the gross value of the list. The principal item was 707 shares of Borden Company, which made up over half the value of these stocks and bonds. The profit on part of the list of these investments would about counterbalance the loss between the date of the surcharge and the date of the guardian's death were it not for the loss suffered because of the depreciation of this stock.

In 1931 there had already been a great decline in the price of securities. Surrogate HOWELL in *Matter of Watson* (145 Misc. 425) wrote on April 21, 1931: " I do feel that the trustees should have such time as good sound judgment may require to protect

the estate against the sale of sound securities in a market that is of *common knowledge depressed."* (Italics mine.)

It does not appear that the guardian made any further inquiry as to whether or not she should sell these stocks and bonds. As there appears to have been a steady decline in their market value for fifteen months after she received them, she may have felt that they should be held upon the advice she originally received. It appears that in 1931 and 1932 twenty-six fire insurance companies purchased Borden stock. On March 17, 1932, the market value of all the " non-legals " held by the guardian was over $3,000 more than at the time of her death. However, on June 17, 1932, and September 17, 1932, fifteen and eighteen months after their receipt, their value was substantially lower than at the time of her death. While the guardian might be criticized for not seeking further competent advice on these investments, except for the small saving had they been sold on March 17, 1932, at no later period does it appear that a greater sum could have been realized than at the time of her death.

The case of *Matter of Junkersfeld* (244 App. Div. 260), cited by the learned referee, may be distinguished from the case at bar. It involved executors of an estate burdened by debts. They failed to liquidate the stocks for a period of three years. At that time the ordinary period for the settlement of an estate was one year. One of the executors was a trust company which did not have a meeting of the trust committee to consider the affairs of the estate after November, 1930; letters having been issued in May of that year, although the estate of approximately $195,000 steadily depreciated until the sum of $161,306.28 was lost.

The court there said (at p. 263):

" Reason and authority demand that where an executor has been honest in exercising his functions as such, his mistakes of judgment are to be dealt with leniently and, indeed, with indulgence. Hindsight must not be substituted for foresight. Numerous authorities may be cited in support of the proposition that an executor or trustee is not to be personally penalized for present or past economic conditions. Where he has been confronted with a dilemma involving a decision, in the case of a falling market, to hold securities in the hope or expectation of a rise in values, or to sell at a reduced price, the disposition of .the courts, acting in retrospect, has been and is not to deal harshly with him in the event that his judgment has proved wrong. (*Matter of Weston*, 91 N. Y. 502; *Matter of Clark*, 257 id. 132; *Matter of Andrews*, 239 App. Div. 32.)

" In the present case, however, even after resolving every issue and inference of fact in favor of the trust company, the conclusion

seems inescapable that there was gross negligence in the handling of this estate."

The guardian acted in good faith. Her judgment was in error, but under the circumstances, no surcharge should be made.

The report of the referee will be modified as above indicated. All other exceptions to his report are overruled.

The report, as modified, is confirmed.

Settle order.