OPINION OF THE COURT
Alfred J. Weiner, S.
This is a proceeding by petitioner to judicially settle his account. Objections were filed and an amended account and amended objections were filed.
The decedent died on November 17, 1983, survived by his two granddaughters, Delfina and Michelle Beghin, who are the objectants. At the time of decedent’s death, Delfina was 15 and Michelle was 11.
Pursuant to a decree dated June 28, 1984, the decedent’s last will, dated March 30, 1982, was admitted to probate and letters testamentary were issued to Lee Hoffman, Jr., the petitioner herein.
Decedent’s will bequeathed his entire estate to objectants in equal shares. The executor was directed to retain the share of either granddaughter, if under the age of 21, and to utilize the principal and interest for the "proper education, support and general welfare of such beneficiary until the age of 21, at which time” the remaining principal and interest would be transferred to such beneficiary. The major asset of decedent’s estate was a residence owned by him and located at 78 Westlyn Drive, Bardonia, New York (hereinafter referred to as the Bardonia house).
After decedent’s death, the objectants, who had been living in the Bardonia house, continued to reside there with their mother, Michelina Beghin. In September 1984, objectants’ mother died and, after her death, they continued to live alone in the house.
At that time, the objectants’ only surviving relative willing to care for them was their uncle, Dominic Bello. He provided food, medical care and other necessities for them. He personally cared for and performed routine maintenance activities at the Bardonia house. He also paid the mortgage, taxes, utilities *228 and other expenses relating to the upkeep of the house. Social Security benefits were paid to Mr. Bello, as representative payee, who utilized the benefits to pay a portion of the mortgage and taxes.
In the summer of 1985, the objectants moved from the Bardonia house to Mr. and Mrs. Bello’s house in Westchester County. They continued to take care of the objectants and provided all their necessaries.
The petitioner sold the Bardonia house on November 20, 1985 for the sum of $158,000. The Bellos then requested reimbursement from the petitioner in the sum of $10,000 for past expenditures paid on behalf of the objectants from the time their mother had died until the time the house was sold. They also requested additional sums of money from petitioner to enable them to purchase a larger home in Westchester County where the objectants could continue to reside with and be cared for by them.
On November 21, 1985, the petitioner paid a total sum of $70,000 from the proceeds of sale of the Bardonia house to the Bellos, which was used by them to purchase a house in Westchester County (hereinafter referred to as the Westchester house). The payment was secured by two notes and mortgages for $30,000 each on the Westchester house. The notes and mortgages were due on the 21st birthday of each of the objectants.
Each of the mortgage notes stated as follows:
"1. This Note and the Mortgage which secures it are given to lee a. hofpman, jr., as Executor of the Estate of frank BELLO, by DOMINIC BELLO and DIANA BELLO. DOMINIC BELLO and diana bella are currently taking care of michelle beghin and delfina beghin, nieces of dominic bello and diana bello, and beneficiaries of the Estate of frank bello.
"2. This Note will take into account that, during the terms of this Note, dominio bello and diana bello may expend their own funds to provide support and care for delfina beghin and michelle beghin. The funds evidenced by this Note and secured by the Mortgage are expressly to permit dominic bello and diana bello to purchase a residence of sufficient size to house themselves, their children and michelle BEGHIN and DELFINA BEGHIN.
"4. This Note shall be paid and the principal reduced as follows:
* * *
*229 "b. No later than January 15, 1986, dominio bello and diana bello shall provide lee A. hoffman, jr. with a statement of monies expended by them for the care and maintenance of premises at 78 Westlyn Drive, Bardonia, New York (including any mortgage, insurance and other payments) between the date of death of michelina beghin and November 20, 1985. In addition, dominio bello and diana bello shall provide lee a. hoffman, jr., with a statement of monies expended by them on behalf of michelle beghin and delfina beghin in excess of the Social Security checks received by michelle beghin and delfina beghin during the period from the date of death of michelina beghin to December 31, 1985.”
The mortgage notes also required that the Bellos were to provide petitioner with a statement of monies expended on behalf of the objectants in excess of the Social Security benefits received on an annual basis until each objectant became 21 years of age. The interest and principal due on the notes was to be reduced by the amount of these excess payments by the Bellos.
Thereafter, the Bellos never provided any statement of monies expended on behalf of the objectants or made any payments of interest and principal as required by the terms of the mortgage notes. The Bellos also defaulted on the first mortgage.
The first mortgage was foreclosed and the Westchester house was ultimately sold at a foreclosure sale in September 1991. At that time the petitioner, in his individual capacity, and his law partner, Eric D. Koster, Esq., purchased the house for the price of $161,000, which was the balance owed pursuant to the terms of the first mortgage, thereby extinguishing the second mortgages.
Objectants contend petitioner was imprudent in advancing $60,000 of estate assets to the Bellos since this was an improper investment. Furthermore, petitioner failed to commence a foreclosure action on the second mortgages or in any other way enforce the terms of the notes when the Bellos defaulted. Also, petitioner acted improperly in paying the $10,000 to the Bellos as reimbursement for expenses paid without having received satisfactory proof that such expenses were actually paid and were reasonable and proper under the circumstances.
Petitioner contends the $60,000 paid to the Bellos was not an investment but was an advancement for the objectants’ *230 support. Petitioner did not foreclose on the mortgages after the Bellos defaulted since this may have resulted in the objectants being unable to continue to reside with and be cared for by the Bellos. The $10,000 payment by petitioner was proper reimbursement to the Bellos for expenses paid by them on behalf of the objectants.
Objectants further contend that petitioner acted improperly in purchasing the Westchester house, in his individual capacity, at the foreclosure sale. Petitioner contends it was necessary for him to purchase the Westchester house in order to preserve whatever equity objectants may have had in the house.
New York generally requires a fiduciary to use such diligence and care in management of assets as a person of ordinary prudence would exercise in managing his own affairs. (Kolentus v Avco Corp., 798 F2d 949, cert denied 479 US 1032; EPTL 11-2.2.)
A fiduciary who negligently performs his obligation may be surcharged. (Matter of Rothko, 56 AD2d 499, affd 43 NY2d 305.) Unless there is impropriety or negligence in the conduct of the fiduciary, followed by loss to the estate, there can be no surcharge. (Matter of Rosenberg, 213 App Div 167.) The burden of establishing a dereliction of duty as a basis for a surcharge is on the objectant. (In re Weinberg’s Will, 69 NYS2d 748.) A surcharge may not be predicated on a ground neither alleged nor proved. (Matter of Spade, 28 AD2d 552.)
The issue on an accounting is not whether, in the opinion of the court, a different course of action would have produced a more satisfactory result, but whether under the circumstances existing at the time the fiduciary acted, the fiduciary acted with such diligence and circumspection as prudent men of discretion and intelligence in such matters employ in their own like affairs. (Matter of Clark, 257 NY 132.)
The court finds that petitioner acted prudently in advancing the sum of $60,000 to the Bellos, under the circumstances existing at that time, since the Bellos agreed to provide shelter and support for the objectants until each of them reached the age of 21. There were no other relatives available to take care of the objectants; petitioner had broad discretion, under the terms of the will, to provide for the objectants’ support and general welfare.
The Bellos utilized the $60,000 to purchase the Westchester house where the objectants resided with them for many years and they also paid for all their necessary expenses. During *231 this time period, no additional payments for support were requested or were made by petitioner to the Bellos, or to anyone else, on behalf of the objectants with the exception of certain dental and educational expenses. Furthermore, objectants did not prove that the Bellos did not provide support in excess of the Social Security payments received during all these years.
Petitioner secured the $60,000 by having the Bellos execute the notes and mortgages on the Westchester house. Petitioner could not foreclose on the second mortgages since such action may have resulted in the objectants being unable to continue to live with the Bellos and jeopardizing the objectants’ ability to reside together as a family unit.
The court further finds that petitioner did not act improperly in purchasing the Westchester house in his individual capacity at the foreclosure sale. The estate was unable to purchase the property since it had insufficient assets and petitioner purchased the property to preserve whatever equity the estate may have had.
Petitioner has agreed that the objectants are the equitable owners of his share of the Westchester house. Accordingly, under the circumstances, a constructive trust is created in favor of the objectants. (Sharp v Kosmalski, 40 NY2d 119; Fisk v Campbell, 180 AD2d 987.)
The court directs that when the Westchester house is sold, the objectants are entitled to any equity which may be realized upon the sale of petitioner’s interest, after deducting all reasonable expenses and cost of improvements. Petitioner is directed to account to the objectants at that time.
The court further finds that the reimbursement of $10,000 by the petitioner to the Bellos for expenses allegedly paid by them on behalf of the objectants and for maintenance of the Bardonia house was improper without sufficient proof having been received as to the actual expenses paid and their reasonableness. Accordingly, petitioner is denied commissions on the $10,000.
Petitioner is surcharged the sum of $10,000 from which sum shall be deducted the actual and reasonable expenses, in excess of Social Security payments received, that are proven *232 to have been paid by the Bellos on behalf of objectants from the time their mother died until the Bardonia house was sold.
The clerk is directed to schedule this matter for a further hearing in accordance herewith.
Petitioner’s application for attorney’s fees will be decided in a separate decision.